PAUL A. BONIN, Judge.
I,Michael Jones appeals his adjudication as a fourth-felony offender under the Habitual Offender Law, La. R.S. 15:529.1, and the ensuing imposition of the statutorily-mandated sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. We previously affirmed his conviction and initial sentence for the underlying felony offenses of simple burglary of an inhabited dwelling and possession of a firearm by a convicted felon. See State v. Jones, 12-0510 (La.App. 4 Cir. 6/12/13), 119 So.3d 859. Mr. Jones filed a pro se brief as well as a brief written by appointed appellate counsel.
Through his pro se brief, Mr. Jones assigns three errors pertaining to his adjudication as a fourth-felony offender. First, Mr. Jones claims that this adjudication should be invalidated because he was neither informed of, nor effectively waived his right to remain silent prior to adjudication. After our de novo review, we conclude that a defendant need not be informed of this right, however, following his decision to deny the allegations contained in a multiple bill of information and to proceed to a full adjudication by formal hearing; such | ¡^protection is only afforded those defendants choosing to confess their recidivist statuses.
Second, Mr. Jones seeks reversal of this adjudication due to the prosecution’s failure to prove beyond a reasonable doubt that he was convicted of distribution of cocaine in 2001, noting that the prosecution introduced' no fingerprint evidence and relied upon other evidence that mentioned a crime other than the one for which Mr. Jones was charged. We find no error, however, in the trial judge’s supported factual finding that that Mr. Jones was convicted of this offense.
*221 Third, Mr. Jones contends that evidence adduced by the district attorney was insufficient because transcripts from proceedings in which Mr. Jones pled guilty to the three prior felonies were unavailable and because the district attorney utilized evidence from neighboring Jefferson Parish. Mr. Jones, however, did not preserve these arguments for appeal by written response or oral objection.
Through his counseled brief, Mr. Jones assigns a single error that his life sentence without parole is both constitutionally and morally excessive. But because, in the trial court, Mr. Jones failed to file a motion to reconsider his sentence, we conclude that he is precluded from raising this objection on appeal and will not consider it.
| ¡Accordingly, after conducting an errors patent review,[1] we affirm the adjudication of Mr. Jones as a fourth-felony offender and the imposition of his life sentence. We explain our decision in greater detail below.
I
The district attorney alleged by multiple bill of information that Mr. Jones had been convicted of three felonies prior to Mr. Jones’ commission on November 11, 2009 of the simple burglary of an inhabited dwelling, a felony offense for which he was most recently convicted. See La. R.S. 15:529.1 A(4)(b).[2] The three prior felony, or predicate, convictions set forth in the multiple bill are:
• On April 25, 2005, a felony conviction (by guilty plea) for distribution of cocaine, a violation of La. R.S. 40:967 A(l), in the 24th Judicial District Court for the Parish of Jefferson, proceedings # 05-0942, with a sentence of ten years in the custody of the Department of Corrections.
• On August 23, 2004, a felony conviction (by guilty plea) for possession of cocaine, a violation of La. R.S. 40:967 C(2), in the 24th Judicial 14Pistrict Court for the Parish of Jefferson, proceedings #04-4572, with a sentence (as a second-felony offender) of thirty months in the custody of the Department of Corrections.
• On February 21, 2001, a felony conviction (by guilty plea) for distribution of cocaine, a violation of La. R.S. 40:967 A(l), in the 24th Judicial District Court for the Parish of Jefferson, proceedings # 99-2962, with a sentence of five years in the custody of the Department of Corrections.
Cocaine is a controlled dangerous substance classified in Schedule II of the Uni *222 form Controlled Dangerous Substances Act. See La. R.S, 40:964, Schedule II A(4). Its distribution is punishable by imprisonment at hard labor for not more than thirty years. See La. R.S. 40:967 A(l), B(4)(b). And simple burglary of an inhabited dwelling is punishable by imprisonment at hard labor for not more than twelve years. See La. R.S. 14:62.2 B. Thus, because, of the four felonies charged in this multiple bill, two are violations of the Uniform Controlled Dangerous Substances Act punishable by imprisonment for ten years or more and another is “any other crime punishable by imprisonment for twelve years or more,” the Habitual Offender Law mandates that Mr. Jones be imprisoned for the remainder of his life, without benefit of parole, probation, or suspension- of sentence if the prosecution proves all of its allegations regarding Mr. Jones four felony convictions. See La. R.S. 15:529.1 A(4)(b).[3] ■ And, because the dates of all | ¡^predicate convictions are within ten years of the commission of the underlying offense, we need not concern ourselves with the district attorney’s burden to negate the ten-year cleansing provision. See La. R.S. 15:529.1 C.[4]
II
' In this Part we review in general the procedure provided by the Habitual Offender Law under which the penalties for the commission of crimes are enhanced for felony-recidivists.[5]
Following a defendant’s felony conviction (and typically after his sentencing for the so-called underlying or “subsequent” offense), the district attorney commences habitual offender proceedings by filing a multiple- bill of information in which he accuses the defendant of a previous felony conviction or convictions. See La. R.S. 15:529.1 D(l)(a). Upon the district attorney’s filing of the multiple bill, the defendant must appear in person before the trial court, at which time the judge shall inform him of the allegations contained in the multiple bill and “of his | ¿right to be tried as to the truth thereof according to law_” Ibid. The judge shall then require the defendant “to say whether the allegations are true.” Ibid. A defendant may admit or acknowledge the allegations of the multiple bill “after being duly cautioned as to his rights.... ” La. R.S. *223 15:529.1 D(S); State v. Hayes, 12-0357, p. 11 (La.App. 4 Cir. 1/23/13), 108 So.3d 360, 368 (citing State v. Johnson, 432 So.2d 815, 817 (La.1983)) (noting that a trial court should, prior to a defendant’s admission, advise that defendant “of his right to a formal hearing, to have the [prosecution] prove its case under the multiple offender statute, [and] of his right to remain silent”). And in such a case the judge may proceed to enhance the sentence as provided by the Habitual Offender Law. See La. R.S. 15:529.1 D(3).
When, however, the defendant denies the allegations (or refuses to answer the judge or remains silent), his plea or the fact of his silence is recorded in the minutes. See La. R.S. 15:529.1 D(l)(a). The defendant shall then be given fifteen days to file particular objections to the multiple bill and a date for a contradictory hearing shall be fixed for the judge “to inquire whether the offender has been convicted of a prior felony or felonies ... as set forth in the information.” Ibid. See, e.g., La. R.S. 15:529.1 D(2). Notably, the discovery procedures permitted by the Code of Criminal Procedure with respect to criminal trials do not apply to these sentencing-enhancement procedures. See State v. Williams, 02-2189, p. 5 (La.App. 4 Cir. 6/4/03), 840 So.2d 799, 802 (holding that the Habitual Offender Law “does not require the [prosecution] to produce its proof of the multiple bill prior to |7the hearing” and only mandates that the district court “inform the defendant of the allegations in the multiple bill and allow him time to object to the allegations”); State v. Dozier, 06-0621, pp. 5-6 (La.App. 4 Cir. 12/20/06), 949 So.2d 502, 505.
Importantly, in order for the defendant to claim that any prior conviction alleged in the multiple bill is invalid, he must, within the fifteen-day period, “file a written response to the information” and serve a copy upon the prosecutor. See La. R.S. 15:529.1 D(l)(b) (emphasis added). See also State v. Jones, 11-0649, p. 9 (La.App. 4 Cir. 10/19/11), 76 So.3d 608, 614. And, when the defendant is claiming that a prior conviction is invalid because it was obtained in violation of the constitutions of Louisiana or of the United States, he “shall set forth his claim, and the factual basis therefor, with particularity in his response to the information.” La. R.S. 15:529.1 D(l)(b) (emphasis added). “Any challenge to a previous conviction .., which is not made before sentence is imposed may not thereafter be raised to attack the sentence.” Ibid. See also State v. Windham, 630 So.2d 688, 688 (La.1993) (per curiam); State v. Taylor, 12-0114, p. 6 (La.App. 4 Cir. 11/28/12), 104 So.3d 679, 684 (noting that “Louisiana jurisprudence has recognized that where an issue is not presented in writing or orally during multiple offender proceedings, it cannot be raised on appeal”).
At the contradictory hearing, generally the district attorney bears the burden of proving any issue of fact beyond a reasonable doubt. See La. R.S. 15:529.1 D(l)(b). But “[t]he presumption of regularity of judgment shall be sufficient to meet the original burden of proof.” Ibid. See also La. C.E. art. 302(3) (“A |8‘presumption’ is an inference created by legislation that the trier of fact must draw if it finds the existence of the predicate fact unless the trier of fact is persuaded by evidence of the nonexistence of the fact to be inferred.”); State v. Shelton, 621 So.2d 769, 780 (La.1993) (A “presumption of regularity ... attaches to judgments of conviction which have become final ...”); Park, 506 U.S. at 31, 113 S.Ct. 517 (“Our precedents make clear ... that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments *224 makes it appropriate to assign a proof burden to the defendant”).
Ill
We turn in this Part to address the specific assignments of error which Mr. Jones raises through his pro se brief, all of which pertain to the adjudication itself.
First, Mr. Jones claims that his adjudication as a fourth-felony offender was invalid because he was neither informed of, nor effectively waived his right to remain silent prior to his adjudication. Second, Mr. Jones contends’ that the prosecution failed to prove beyond a reasonable doubt that he was convicted of distribution of cocaine in 2001, noting that fingerprint evidence was not introduced and that a Boykin form, utilized by the prosecution, discusses in a parenthetical notation the eligibility for parole, probation, or suspension of sentence for a crime other than the one for which Mr. Jones was charged. Third, Mr. Jones contends that the evidence adduced by the district attorney was insufficient because of the unavailability of transcripts from proceedings in which Mr. Jones previously pled guilty and the introduction of evidence from a neighboring parish.
lflWe discuss each argument individually and determine that each is without merit.
A
In our review of a trial judge’s decisions, we grant great deference to findings of fact and “may not overturn those findings unless there is no evidence to support those findings.” State v. Wells, 08-2262, p. 4 (La.7/6/10), 45 So.3d 577, 580. See also State v. Morgan, 09-2352, p. 5 (La.3/15/11), 59 So.3d 403, 406 (“Furthermore, a reviewing court must give due weight to factual inferences drawn by resident judges.... ”). This extremely-heightened deference is rooted in the limitations of our appellate jurisdiction set forth in Article 5, Section 10(B) of the Louisiana Constitution, which provides: “In criminal cases, [an appellate court’s] jurisdiction extends only to questions of law.” This limited scope of review also stems from the “complementary role of trial courts and appellate courts,” State v. Love, 00-3347, p. 9 (La.5/23/03), 847 So.2d 1198, 1206, as district judges have the unique “opportunity to observe the witnesses and weigh the credibility of their testimony.” Wells, 08-2262, p. 5, 45 So.3d at 581. Applying the trial judge’s supported findings of fact, we then review the trial judge’s holdings on questions of law de novo. See State v. Palmer, 09-0044, p. 5 (La.7/1/09), 14 So.3d 304, 307.
B
Mr. Jones claims that he was neither informed of, nor effectively waived his right to remain silent prior to his adjudication as a fourth-felony offender, 11(lrendering that adjudication invalid. Following our de novo review, we determine that the trial judge did not err by failing to advise Mr. Jones of that right.
Before a defendant’s acknowledgment or confession in open court that he has previously been convicted of a felony or felonies, a trial judge must caution the defendant as to his rights, specifically his rights to a formal hearing, to have the district attorney prove the elements of his case, and to remain silent. See Johnson, 432 So.2d at 817. These requirements “should not serve as technical traps for an unwary but otherwise conscientious judge,” however. State v. Cook, 11-2223, p. 1 (La.3/23/12), 82 So.3d 1239, 1240 (per curiam). Thus, appellate courts are permitted to review records to determine whether a “[defendant’s interests 'were fully protected and any technical non-compliance with the statutory directives ... was harmless.” Id., 11-2223, p. 2, 82 So.3d *225 at 1240-41. “Generally, a trial court’s failure to advise the defendant of his rightfs] ... is considered harmless error, when the defendant’s multiple offender status is established by competent evidence offered by the [prosecution] at a hearing, rather than by admission of the defendant.” Hayes, 12-0357, p. 13, 108 So.3d at 368. This review is often performed “in light of the documentary proof introduced by the [prosecution] at the hearing that the defendant is the person who pled guilty to the predicate offenses, and in light of the defendant’s own admissions in his testimony at trial....” State v. Brown, 11-1656, pp. 1-2 (La.2/10/12), 82 So.3d 1232, 1233-34 (per curiam). See also State v. Stanfield, 13-1193, p. 8 (La.App. 4 Cir. 3/26/14), 137 So.3d 788, 794 (quoting State v. Payton, 00-2899, p. 6 (La.3/15/02), 810 So.2d 1127, 1130-31).
A criminal defendant need not be informed of these rights, however, following that defendant’s decision to deny the allegations contained in the multiple bill and to proceed to a full adjudication by formal hearing of the defendant’s habitual offender status. See State v. Wright, 598 So.2d 1267, 1269 (La.App. 4th Cir.1992). Here, Mr. Jones denied the allegations in his multiple bill. A formal adjudicatory hearing was held, and the district attorney introduced competent evidence and proved beyond a reasonable doubt that Mr. Jones was a fourth-felony offender. The Habitual Offender Law only affords the protections that Mr. Jones seeks to those defendants that confess their statuses as habitual offenders. We find no error in the trial judge’s failure to advise Mr. Jones of his right to remain silent as Mr. Jones was not entitled to such advisement as a matter of law.
C
Mr. Jones seeks reversal of his adjudication as a fourth-felony offender due to the prosecution’s failure to prove beyond a reasonable doubt that he was convicted in 2001 of distribution of cocaine, as charged in the multiple bill. To support this assertion, Mr. Jones claims that the prosecution did not introduce fingerprint evidence for this conviction and also utilized a Boykin form that discusses eligibility for parole, probation, or suspension of sentence for a crime (armed robbery and attempted armed robbery) other than the one for which Mr. 11⅞Jones was charged. Here, Mr. Jones considers neither the entirety of the evidence submitted by the district attorney, nor the important testimony elicited during the adjudication hearing. Furthermore, Mr. Jones has previously confessed his identity as the person convicted of this crime as part of a guilty plea to a multiple bill in August 2004. Thus we find no clear error in the trial judge’s factual findings.
The district attorney bears the burden of proving any issue of fact in these proceedings beyond a reasonable doubt. See La. R.S. 15:529.1 D(l)(b). “To obtain a habitual offender conviction, the [prosecution] is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony.” Stanfield, 13-1193, p. 8, 137 So.3d at 794 (quoting Payton, 00-2899, p. 6, 810 So.2d at 1130). See also Brown, 11-1656, p. 2, 82 So.3d at 1234. In attempting to establish identity, “the [prosecution] may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical drivers license number, sex, race and date of birth.” Stanfield, 13-1193, p. 8, 137 So.3d at 794 (quoting Payton, 00-2899, p. 6, 810 So.2d at 1130-31) (emphasis in original). *226 See also State v. Martin, 13-0628, pp. 14-15 (La.App. 4 Cir. 5/28/14), 141 So.3d 933, 943 (citing State v. Brown, 514 So.2d 99, 106 (La.1987); State v. Jones, 408 So.2d 1285, 1294 (La.1982)). “Thus, matching the fingerprints on the bill of information from the initial crime is not required for the [prosecution] to prove that a defendant charged as a habitual |iaoffender is the same person previously convicted.” Stanfield, 13-1193, p. 9, 137 So.3d at 794.
Here, the trial judge found as a matter of fact that Mr. Jones committed the crime of distribution of cocaine in 2001, as charged in the multiple bill. As previously stated, the district attorney sought to adjudicate Mr. Jones as a fourth-felony offender under the Habitual Offender Law. One of the offenses included in the multiple bill was a felony conviction (by guilty plea) for distribution of cocaine, a violation of La. R.S. 40:967 A(l), on February 21, 2001, in the 24th Judicial District Court for the Parish .of Jefferson in proceedings # 99-2962. This prior conviction was the only one disputed by Mr. Jones at the multiple offender proceedings on June 20, 2014.
The district attorney introduced evidence from both Orleans and Jefferson Parish documenting Mr. Jones’ arrest, prosecution, and conviction, as well as elicited the testimonies of a police investigator and a fingerprint expert. As relevant to this particular conviction, Sandy Gavin, an Investigator at the Orleans Parish District Attorney’s office, testified that she obtained Mr. Jones’s criminal record, date of birth, and social security number at the request of an assistant district attorney. In her investigation, Ms. Gavin discovered that Mr. Jones had been arrested on March 17, 1999 in Orleans Parish as a result of numerous alias capias orders stemming from pending controlled dangerous substance charges in Jefferson Parish. As evidence of these arrests, the district attorney introduced numerous |14copies of Arrest Registers from Orleans Parish that included fingerprint cards and contained Mr. Jones’ correct birth date and social security number.
Ms. Gavin then testified that an additional arrest card from Jefferson Parish was discovered which indicated that Mr. Jones was arrested on March 19, 1999. Ms. Gavin testified that this record is consistent with a transfer of custody when a person is arrested for warrants in another jurisdiction. The State next introduced the Certified Conviction Packet from Jefferson Parish for this offense, on which Mr. Jones’ birthday was properly listed. Ms. Gavin also testified that the Orleans Parish Arrest Registers’ “affidavit number” was identical to the Jefferson Parish Conviction Packet’s “complaint number,” which established the connection between these as being for the same person, Mr. Jones, and for the same offense.
George Jackson, an officer with the New Orleans Police Department for 12 years, was then stipulated as an expert in the taking, examining, and comparing of fingerprints. Officer Jackson testified that Mr. Jones’ thumbprints were documented in court that day and that he determined that Mr. Jones’ fingerprints matched those documents in the Arrest Registers from Orleans Parish in 1999.
While the arrest record for Mr. Jones in Jefferson Parish is missing a completed fingerprint card, the prosecution sufficiently proved Mr. Jones’ identity beyond a reasonable doubt by introducing Arrest Registers from Orleans Parish and a Certified Conviction Packet from Jefferson Parish. These forms were connected by identical identifying numbers and included Mr. Jones’ proper birth date and social security number. The fingerprints associated with the Arrest 1 ^Registers from Or *227 leans Parish were also found to match Mr. Jones’ fingerprints after the prosecution established the relevance of those documents to Mr. Jones’ conviction for distribution of cocaine in 2001.
Mr. Jones also asserts that the Boykin form utilized as evidence by the district attorney, specifically Mr. Jones’ “Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty” form, mentions a crime (armed robbery and attempted armed robbery) for which Mr. Jones was not charged. The trial judge found that the printed form-language discussing the other offenses was “of no consequence” as the particular language was in a parenthetical and that the provision did not indicate that Mr. Jones was pleading to those crimes. We agree. This provision, while unnecessary to Mr. Jones’ guilty plea form, will not justify reversal of Mr. Jones’ adjudication.
Here, the prosecution introduced sufficient evidence to establish beyond a reasonable doubt that Mr. Jones was convicted in Jefferson Parish of distribution of cocaine in 2001. Furthermore, as previously mentioned but not argued at the adjudicatory hearing or in briefing by the parties, Mr. Jones previously confessed that he was convicted of this crime as part of his guilty plea to a multiple bill in August 2004, an offense used in this multiple bill for which Mr. Jones does not contest his identity. We thus find no error in the trial judge’s supported factual finding that the district attorney sufficiently established Mr. Jones’ identity as the person convicted of the prior offense, as alleged in the multiple bill.
lifrD
Mr. Jones contends that the evidence adduced by the district attorney at this multiple offender proceeding was also insufficient due to the unavailability of transcripts from proceedings in which Mr. Jones previously pled guilty to the three underlying felony convictions and the introduction of an arrest report and fingerprint card from neighboring Jefferson Parish.
Mr. Jones did not preserve either of these arguments for appeal by written response prior to the multiple bill hearing or by oral objection during that hearing.[6] See La. R.S. 15:529.1 D(1)(b). See also Windham, 639 So.2d at 688; Taylor, 12-0114, pp. 5-6, 104 So.3d at 683-84. As these claims were not properly preserved for our review, we do not consider their merits.
IV
In this Part we explain why we will not consider Mr. Jones’ counseled assignment of error that his mandatory life sentence without benefit of parole, probation, or suspension of sentence is constitutionally-exeessive. At the outset we note that Mr. Jones here on appeal has referred to eminent commentators, including Pope Francis, who object to mandatory life sentences without parole as “hidden” death sentences because such sentences are designed for the convicted offender to die in the penitentiary albeit not by execution. But the trial record is clear that no objection was made to the sentence which was imposed at the time of 117sentencing[7] and *228 no motion to reconsider the sentence was filed. Thus Mr. Jones failed to preserve the claim of excessiveness of his sentence for our review. See La.C.Cr.P. art. 881.1 E (“Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.”) (emphasis added); La.C.Cr.P. art. 881.2 A(l) (“The defendant may appeal or seek review of a sentence based on any ground asserted in a motion to reconsider sentence.”).
When a defendant properly moves for reconsideration of his sentence on the ground that the sentence imposed exceeds what is constitutionally permissible, the sentencing judge conducts an evidentiary hearing in order “to explicitly determine whether the defendant’s situation is one of those rare and exceptional circumstances that would justify a downward departure from the legislatively mandated and presumptively constitutional sentence of life imprisonment”. State v. Pernell, 13-0180, p. 16 (La.App. 4 Cir. 10/2/13), 127 So.3d 18, 30. Here, nothing was offered to the sentencing judge to individualize the sentence, and thus there is nothing for us to review.
hsDECREE
We affirm the adjudication of Michael Jones, the defendant-appellant,- as a fourth-felony offender under La. R.S. 15:529.1 A(4)(b)[8] and the imposition of the sentence of imprisonment for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
AFFIRMED.

. We have examined the record for patent errors, as we always do, and have detected none. See La.C.Cr.P. art. 920(2). See, e.g., State v. Moore, 12-0102 (La.5/25/12), 90 So.3d 384 (per curiam) (discussing errors patent review in the context of Boykin colloquies and multiple offender proceedings); State v. Gayton, 13-1613 (La.App. 4 Cir. 1/28/15), 158 So.3d 955, 963-964, (elaborating upon the errors patent review conducted by this Court).

. See La. R.S. 15:529.1 A(l)(c)(ii) (West 2009). All section references to the Habitual Offender Law in this opinion are, for convenience, to the statute as it currently reads. We recognize, however, that we must apply the statute as written on November 11, 2009, the date of the underlying offense. See State v. Sugasti, 01-3407, p. 4 (La.6/21/02), 820 So.2d 518, 520 ("A defendant must be sentenced according to sentencing provisions in effect at the time of the commission of the offense.”); State v. Parker, 03-0924, p. 9 (La.4/14/04), 871 So.2d 317, 322 (defendant’s status as an habitual offender is determined as of the date he commits the underlying offense). When citation to the current version of the statute differs from the statute in effect at that time, we note the proper November 2009 citation in a footnote. These statutory references are interchangeable because there has been no substantive change to the portions of this statute pertinent to this opinion.

. See La. R.S. 15:529.1 A(l)(c)(ii) (West 2009).

. ⅞On November 11, 2009, La. R.S. 15:529.1 G provided, in relevant part:
The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, ... or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions ... alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.

."Statutes that punish recidivists more severely than first offenders have a long tradition in this country that dates back to colonial times.... States have a valid interest in deterring and segregating habitual criminals.” Parke v. Raley, 506 U.S. 20, 26-27, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). Louisiana’s Habitual Offender Law was enacted "as a deterrent and a warning to first offenders and as a protection to society by removing the habitual offender from its midst.” State v. Shaw, 06-2467, p. 17 (La. 11/27/07), 969 So.2d 1233, 1243. The statute's "goal is to deter and punish recidivism by punishing more harshly those who commit the most crimes.” Id.

. Furthermore, the introduction of perfect transcripts of Mr. Jones' guilty pleas to underlying offenses, while desirable, is not mandatory, see Shelton, 621 So.2d at US-16, and the utilization of convictions and evidence from other parishes — even other states — is statutorily-permitted. See La. R.S. 15:529.1 D(l)(a).

. Mr. Jones' counsel’s only objection was to vacating the original sentence imposed and *228 sentencing Mr. Jones as an adjudicated fourth-felony offender.

. See La. R.S. 15:529.1 A(l)(c)(ii) (2009).